UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT ALSPAUGH, JR.,

                Plaintiff,                Case No. 2:06-cv-111

v.                                    HON. R. ALLAN EDGAR

REX MCCONNELL, et al.,

                Defendants.

_____/

### REPORT AND RECOMMENDATION

        Plaintiff Robert Alspaugh, Jr., an inmate at the Southern Michigan Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Dr. Rex McConnell, Warden J. Hofbauer, Deputy Warden C. Aalto, Dr. Asher Berhane, Scott Ewers, R.N., Larry Hill, R.N., Marie Jordan, R.N., John Kimsel, R.N., Unknown Parties named as "Responsible Officials directly involved," Unknown Quinn, R.N., Chief Psychologist Mental Health Services Jim Conklin, Assistant Resident Unit Supervisor D. Mayotte, Unknown Kangas, Unknown Cox, Sergeant Unknown Champion, and C. Tallio, all of whom were employed at the Marquette Branch Prison (MBP) during the pertinent time period. Plaintiff alleges that on November 1, 2004, while he was confined at MBP, he was injured during a confrontation with several unit officers. In describing the incident, Plaintiff claims that after coming out of the hearing room, he kicked the shower cart. Plaintiff was then taken to the ground and while on the floor, Defendant Kangas and other unidentified officers began to punch him in the lower back and thigh area. During the assault,

Defendant Kangas was yelling for Plaintiff to stop resisting, despite the fact that Plaintiff was not resisting at all.  Plaintiff has been unable to discover the identity of the involved officers.

Plaintiff requested treatment for the injuries he obtained during the assault from Defendant Ewers, and was scheduled to see Defendant McConnell the following day.  However, when Plaintiff was due to go to his appointment, the custody staff refused to let him out of his cell. Plaintiff later discovered that he was on a "no out of cell movement" restriction as a result of the November 1 incident.  Plaintiff was not seen by Defendant McConnell until November 4, 2004, and then McConnell only looked at Plaintiff through his cell bars.  Defendant McConnell knew that Plaintiff had broken his neck in the past, but still refused to give Plaintiff an immediate, thorough exam.  Plaintiff notified Defendants Hofbauer and Aalto of the denial of medical care, without avail. Plaintiff was allowed out of his cell to attend a hearing and to be x-rayed on November 24, 2004.

Plaintiff claims that Defendants Kangas, Cox and Champion are responsible for misleading Plaintiff regarding the identity of Defendants Unknown Parties, who are the officers who allegedly assaulted him.  Plaintiff states that Defendants Kangas, Cox and Champion denied him a review on his grievance in violation of his due process rights.  Plaintiff claims that the Unknown Parties have a history of such conduct and that the incident should be investigated.

Plaintiff claims that he has a chronic hemorrhoid problem and has repeatedly kited health care regarding his need for relief.  Plaintiff claims that he has been repeatedly "skipped" from sick call, canceled from scheduled appointments by Defendant Berhane, and denied treatment for this problem, which has resulted in constant rectal pain and significant bleeding.  Plaintiff claims that Defendant Berhane and the nurses told him that his condition was not serious and to drink more water.

Plaintiff claims that on July 22, 2005, he was denied treatment for a broken toe by Defendants Ewers, Quinn and Berhane. Plaintiff states that Defendant Ewers refused to give Plaintiff Motrin or to pick up a step I grievance for processing in an attempt to deny Plaintiff documentation of Defendants' mistreatment. Defendant Kimsel eventually picked up the step I grievance, but told Plaintiff that nothing could be done. On July 26, 2005, "R.N. Dan" looked at Plaintiff's toe and confirmed that it appeared to be broken. R.N. Dan then brought Plaintiff an ice pack. Plaintiff states that, contrary to the step II grievance response, he never told Defendant Berhane that his toe had improved and that he did not need pain medication. On July 28, 2005, Defendant Jordan looked at Plaintiff's toe, which was "black, blue, red, yellow, green, purple and still swolen [sic], and looked infected." Defendant Jordan went and got Defendant Berhane, who spoke to Plaintiff and ordered an x-ray. The x-ray showed that Plaintiff's toe was indeed broken, but Plaintiff was merely told to keep using aspirin from the prisoner store. Plaintiff complained that aspirin was ineffective and that he did not "get indigent store" until the last week of the month. Plaintiff states that the nurses seldom had aspirin or Motrin with them during rounds, and they picked and chose who got the medication. As a result, Plaintiff was denied pain medication on most occasions. On August 6, 2005, Plaintiff kited health care for x-ray results and pain medication, but Defendant Ewers tried to avoid taking Plaintiff's kite. As a result, Plaintiff and Defendant Ewers got into an argument and Defendant Ewers falsified a misconduct on Plaintiff. In addition, Plaintiff did not receive any pain medication. Plaintiff claims that the infection in his toe and the related stress exacerbated his HIV and Hepatitis C, causing his immune system to fail.

In addition, Plaintiff claims that he has a history of mental health problems and has been denied treatment since 2000. Plaintiff believes that his prison file contains "unknown documents" which prevent him from getting treatment. Plaintiff has been unable to challenge the

erroneous information in order to obtain treatment.  Plaintiff states that he has been deliberately misdiagnosed in retaliation for a July 2002 incident which occurred while he was confined at the Baraga Maximum Correctional Facility (AMF).  Plaintiff also claims that the grievance responses were falsified in order to make it appear that his mental health needs were being met.  Plaintiff concludes that Defendants Conklin and Mayotte were both involved in denying Plaintiff's requests for mental health treatment.

Defendants Hofbauer, Alto and Conklin move to dismiss the complaint against them. Defendants Ewer, Hill, Champion, Kimsel, Mayotte, Kangas, Jordan and Tallio move for summary judgment.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true.  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court must construe the complaint in the light most favorable to plaintiff.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations.  *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47).  The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts.  *Mayer*, 355 U.S. at 638.  While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions.  *Delorean*, 991 F.2d at 1240.  "In practice, a complaint must contain either direct or

- 4 -

inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants Hofbauer, Alto and Conklin argue they are entitled to dismissal under Rule 12(b)(6) because Plaintiff has not asserted factual allegations in his complaint establishing personal involvement by these Defendants. Defendants Tallio and Hill move for summary judgment

- 5 -

based upon lack of personal involvement.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325.  A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982).  *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if Plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of Plaintiff's federal rights.  *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985).  However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct.  *Leach*, 891 F.2d at 1246.  Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable.  *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992).  In addition, Plaintiff must show that defendant had some duty or authority to act.  *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient

grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932

F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory

official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D.

Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims

cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp.

335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

It appears that Plaintiff named Defendants Warden Hofbaur, Deputy Warden Aalto,

Chief Psychologist Conklin, Grievance Coordinator Tallio, and Health Unit Manager Hill because

of their supervisory capacity. Plaintiff has not alleged facts establishing that these Defendants were

personally involved in the activity which forms the basis of his claim. Accordingly, it is

recommended that the court dismiss these Defendants from this action.

Plaintiff alleges that he was denied appropriate medical care and mental health

services by Defendants. The Eighth Amendment prohibits the infliction of cruel and unusual

punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment

obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide

such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429

U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d

693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective

component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

Plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the

inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted).

- 8 -

Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff alleges that he was denied treatment for injuries that he received from the alleged assault, treatment for his hemorrhoid problem, treatment for his broken toe, and that he was denied mental health treatment. Plaintiff also has HIV and hepatitis C. Plaintiff clearly has received a significant amount of medical care and treatment. Plaintiff was treated for each of the medical problems outlined in his complaint. Plaintiff disagrees with the degree of treatment and believes that

he should have received more or better medical care.  The records establish that Plaintiff has received medical care and treatment for all of his medical issues.  Plaintiff cannot establish that any defendant acted with deliberate indifference in denying him necessary medical care.

Plaintiff alleges that Defendants Kangas and Champion used excessive force in restraining him on November 1, 2004.  The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

Plaintiff's claim involving the use of force must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment.  *Rhodes*, 452 U.S. 347.  The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  In determining whether the use of force is wanton and unnecessary, the court should evaluate the need

for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Defendants Kangas and Champion were escorting Plaintiff to his cell after a misconduct hearing. Plaintiff was wearing chain restraints. Plaintiff began pulling on the restraints and tried to pick up a food cart that was in the hallway. Defendants placed Plaintiff on the floor, but Plaintiff continued to struggle until other officers assisted and leg irons were applied. Plaintiff was then escorted back to his cell without incident. Plaintiff received a misconduct as a result of this incident for assault.[1] Accordingly, it is recommended that Defendants Kangas and Champion be dismissed from this case because they used reasonable and necessary force to control Plaintiff in response to Plaintiff's inappropriate behavior.

Defendants argue that they are entitled to the defense of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

---

[1]Defendants indicate that Plaintiff was found guilty of the misconduct and refer to exhibit C of their motion. However, exhibit C is a copy of the major misconduct ticket. It appears that Defendants failed to attach a copy of the misconduct hearing report to their motion.

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the Plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated Plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be

resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  In the opinion of the undersigned, the moving Defendants are entitled to the defense of qualified immunity because Plaintiff has failed to show that these Defendants violated any of his clearly established rights.

Accordingly, it is recommended that the motion to dismiss filed by Defendants Hofbauer and Alto (Docket # 135) be granted, dismissing them from this case.  It is further recommended that the motion for summary judgment filed by Defendants Ewer, Hill, Champion, Kimsel, Mayotte, Kangas, Jordan and Tallio (Docket #141) be granted, dismissing each of these Defendants from this case.  Finally, it is recommended that Plaintiff's Fed. R. Civ. P. 56 (f) motion (Docket #161) and motion to strike (Docket #167) be denied.  The remaining claims in this case are against the non-moving parties:   Dr. Asher Berhane, Dr. Rex McConnell, Unknown Quinn and Unknown Cox.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  October 17, 2007

- 14 -