UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT ALSPAUGH, JR.,

        Plaintiff,                       Case No. 2:06-cv-111

v.                                               HON. R. ALLAN EDGAR

REX MCCONNELL, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Robert Alspaugh, Jr., an inmate at the Southern Michigan Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Dr. Rex McConnell, Warden J. Hofbauer, Deputy Warden C. Aalto, Dr. Asher Berhane, Scott Ewers, R.N., Larry Hill, R.N., Marie Jordan, R.N., John Kimsel, R.N., Unknown Parties named as "Responsible Officials directly involved," Unknown Quinn, R.N., Mental Health Services Chief Psychologist Jim Conklin, Assistant Resident Unit Supervisor D. Mayotte, Unknown Kangas, Unknown Cox, Sergeant Unknown Champion, and C. Tallio, all of whom were employed at Marquette Branch Prison (MBP) during the pertinent time period. Plaintiff alleges that on November 1, 2004, while he was confined at MBP, he was injured during a confrontation with several unit officers. In describing the incident, Plaintiff claims that after coming out of the hearing room, he kicked the shower cart. Plaintiff was then taken to the ground and while on the floor, Defendant Kangas and other unidentified officers began to punch Plaintiff in the lower back and thigh area. During the assault, Defendant Kangas was yelling for Plaintiff to stop resisting, despite the fact that Plaintiff was not resisting at all. Plaintiff has been unable to discover the identity of the involved officers.

Plaintiff requested treatment for the injuries he obtained during the assault from Defendant Ewers, and was scheduled to see Defendant McConnell the following day. However, when Plaintiff was due to go to his appointment, the custody staff refused to let him out of his cell. Plaintiff later discovered that he was on a "no out of cell movement" restriction as a result of the November 1 incident. Plaintiff was not seen by Defendant McConnell until November 4, 2004, and then McConnell only looked at Plaintiff through his cell bars. Defendant McConnell knew that Plaintiff had broken his neck in the past, but still refused to give Plaintiff an immediate, thorough examination. Plaintiff notified Defendants Hofbauer and Aalto of the denial of medical care, without avail. Plaintiff was allowed out of his cell to attend a hearing and to be x-rayed on November 24, 2004.

Plaintiff claims that Defendants Kangas, Cox and Champion are responsible for misleading Plaintiff regarding the identity of Defendants Unknown Parties, who consisted of the officers who assaulted him. Plaintiff states that Defendants Kangas, Cox and Champion denied him a review on his grievance in violation of his due process rights. Plaintiff claims that the Unknown Parties have a history of such conduct and that the incident should be investigated.

Plaintiff claims that he has a chronic hemorrhoid problem and has repeatedly kited health care regarding his need for relief. Plaintiff claims that he has been repeatedly "skipped" from sick call, canceled from scheduled appointments by Defendant Berhane, and denied treatment for this problem, which has resulted in constant rectal pain and significant bleeding. Plaintiff claims that Defendant Berhane and the nurses told him that his condition was not serious and to drink more water.

Plaintiff claims that on July 22, 2005, he was denied treatment for a broken toe by Defendants Ewers, Quinn and Berhane. Plaintiff states that Defendant Ewers refused to give

Plaintiff Motrin or to pick up a step I grievance for processing in an attempt to deny Plaintiff documentation of Defendants' mistreatment. Defendant Kimsel eventually picked up the step I grievance, but told Plaintiff that nothing could be done. On July 26, 2005, "R.N. Dan" looked at Plaintiff's toe and confirmed that it appeared to be broken. R.N. Dan then brought Plaintiff an ice pack. Plaintiff states that, contrary to the step II grievance response, he never told Defendant Berhane that his toe had improved and that he did not need pain medication. On July 28, 2005, Defendant Jordan looked at Plaintiff's toe, which was "black, blue, red, yellow, green, purple and still swolen [sic], and looked infected." Defendant Jordan went and got Defendant Berhane, who spoke to Plaintiff and ordered an x-ray. The x-ray showed that Plaintiff's toe was indeed broken, but Plaintiff was merely told to keep using aspirin from the prisoner store. Plaintiff complained that aspirin was ineffective and that he did not "get indigent store" until the last week of the month. Plaintiff states that the nurses seldom had aspirin or Motrin with them during rounds, and they picked and chose who got the medication. As a result, Plaintiff was denied pain medication on most occasions. On August 6, 2005, Plaintiff kited health care for x-ray results and pain medication, but Defendant Ewers tried to avoid taking Plaintiff's kite. As a result, Plaintiff and Defendant Ewers got into an argument and Defendant Ewers falsified a misconduct on Plaintiff. In addition, Plaintiff did not receive any pain medication. Plaintiff claims that the infection in his toe and the related stress exacerbated his HIV and Hepatitis C, causing his immune system to fail.

In addition, Plaintiff claims that he has a history of mental health problems and has been denied treatment since 2000. Plaintiff believes that his prison file contains "unknown documents" which prevent him from getting treatment. Plaintiff has been unable to challenge the erroneous information in order to obtain treatment. Plaintiff states that he has been deliberately misdiagnosed in retaliation for a July 2002 incident which occurred while he was confined at the

Baraga Maximum Correctional Facility (AMF). Plaintiff also claims that the grievance responses were falsified in order to make it appear that his mental health needs were being met. The remaining defendants, Dr. McConnell, Dr. Berhane and N.P. Quinn, move for summary judgment. Plaintiff also moves for summary judgment.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*

Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27,

2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at * 4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at * 2 (6th Cir. Apr. 4, 1997).

On March 2, 2004, Dr. McConnell saw Plaintiff because he was not feeling well. Plaintiff complained of constipation, exhaustion and appetite problems. Dr. McConnell noted that the constipation was related to Plaintiff's diet and that Plaintiff reported that mineral oil helped. Dr. McConnell saw Plaintiff on March 30, 2004, regarding his hemorrhoids and rash on his feet. On April 20, 2004, and again on May 27, 2004, Plaintiff was examined by Dr. McConnell for constipation and occasional blood in his stool. Plaintiff was also seen by a nurse during this time period regarding his complaints of hemorrhoids and constipation.

On November 1, 2004, a nurse saw Plaintiff after Plaintiff was involved in an altercation. The Clinical Progress Note states:

> S: "they beat me up."
>
> O: Seen cellside after alleged assault on staff following court hearing, noted multiple scraps on both wrists, both ankles, left thigh, and most notably he c/o severe stiff neck after the fight with staff. He claims he had a cervical fusion approximately 4 years ago. Staff reports it was a very physical fight in which the prisoner resisted staff. No neuro complaints offered, no other injuries reported.
>
> A: Alteration in comfort r/t staff assault.
>
> P. Will list for msp check of cervical strain further, f/u prn.

Plaintiff concedes that he was seen through his cell door by Dr. McConnell on November 4. The next day Plaintiff was again seen cell side by a nurse after he complained of neck pain. Dr.

McConnell ordered an x-ray of Plaintiff's spine and a soft cervical collar for Plaintiff on November 19, 2004. The radiology report noted a history of fusion of the C6-7 vertebral bodies, but no acute fractures. There were degenerative changes noted with a spur formation narrowing the neural foramina. Plaintiff was seen throughout December for neck pain and advised to take OTC analgesics and to try warm compresses and exercises. Plaintiff's soft collar was ordered for another three months and he was prescribed Motrin. In January 2005, Plaintiff saw N.P. Guinn about complaints of constipation and hemorrhoids. Plaintiff was told to continue to take Metamucil, drink water, and add Colace for stool problems.

Dr. Berhane saw Plaintiff in March 2005 for a physical examination. Plaintiff's complaints included constipation and neck problems. Dr. Berhane noted that Plaintiff had to live with degenerative joint disease and disk function and that she could only provide supportive care, but that if symptoms worsened another x-ray would be provided. In June 2005, Dr. Berhane ordered a cervical spine x-ray and a consultation for surgical evaluation for Plaintiff's hemorrhoid complaints. The request was not approved because it was considered elective surgery that was not necessary. The medical records show that Plaintiff continued to receive medical care and follow-up for his complaints of neck pain. In July, 2005, Plaintiff was seen by Dr. Berhane after Plaintiff bumped his toe on his toilet. Follow-up care and an x-ray showed a fracture. Plaintiff was told to take Motrin and to soak his toe in Epsom salt.

Plaintiff has received extensive and ongoing medical care from defendants and other medical staff throughout his incarceration, despite his claims otherwise. In fact, Plaintiff has been treated for a number of complaints and medical issues, including HIV. Plaintiff disagrees with the course of treatment and apparently feels that a more aggressive approach should have been followed

by the defendants. In the opinion of the undersigned, Plaintiff has failed to show that any of the defendants acted with deliberate indifference to a serious medical need.

Plaintiff has filed a motion to amend his complaint to add Correctional Medical Services and the County of Marquette as parties. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). Plaintiff has not shown that his constitutional rights were violated by any named defendant or that he received improper medical care. An amendment to Plaintiff's complaint to add these parties would be futile. Plaintiff has not shown how Marquette County was involved or how Plaintiff was denied constitutional medical care. Moreover, an amendment at this time would unduly delay the resolution of this case.

Accordingly, it is recommended that the motion for summary judgment filed by defendants Berhane, McConnell and Guinn (Docket #321) be granted, Plaintiff's motion for summary judgment (Docket # 256) be denied, and this case be dismissed in its entirety.

It is further recommended that Plaintiff's motion to stay (Docket #270), motion to compel (Docket #301), motion to amend (Docket # 302), motion for writ of habeas corpus (Docket #303), motion for order (Docket # 305), motion to compel (Docket # 316), motion for a preliminary injunction and temporary restraining order (Docket #319), and motion for default (Docket #330) be denied and defendants' motion to extend the trial date (Docket # 306) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 18, 2008